In the Matter of the Application of FRANK E. CROSBY, Respondent, for a Writ of Mandamus against the BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant.

First Department, April 4, 1919.

Civil service — schools — right of janitor-engineer in service of department of education of city of New York to permanent occupancy of one school or to particular salary — evidence not establishing removal of engineer through improper motives.

A janitor-engineer in the service of the department of education of the city of New York who had held such position in a certain school for about nine years made application for transfer to a high school, which was granted with temporary compensation by the department of education in the ordinary course of business, and said janitor was subsequently retransferred to the first school and remained in such position until the acceptance of his resignation which he tendered claiming that his appointment to the high school was permanent and at a larger salary, and that his retransfer was illegal and made for personal and political reasons. *Held*, under the evidence, that said janitor is not entitled to a writ of mandamus upon the theory that his removal was actuated by improper motives.

There being but one grade in the civil service classification under which said janitor was listed, he had no vested right to permanent occupancy of any one school or to any particular salary, and he cannot complain, the original transfer to the high school and the retransfer having been made in the exercise of the board's discretion.

Where a single grade in the classified civil service has compensation varying with the extent and character of the services to be rendered and the responsibilities to be undertaken, no one in that classification can complain if his financial return varies as his assignment changes.

SMITH, J., dissented.

APPEAL by the defendant, The Board of Education of the City of New York, from an order of the Supreme Court, made at the Bronx Special Term and entered in the office of the clerk of the county of Bronx on the 3d day of February, 1919, granting the petitioner's motion for an alternative writ of mandamus.

*William E. C. Mayer* of counsel [*Terence Farley* with him on the brief; *William P. Burr, Corporation Counsel*], for the appellant.

*John E. O'Brien*, for the respondent.

DOWLING, J.:

The relator is a janitor-engineer in the service of the department of education of the city of New York and for upwards of nine years prior to May 8, 1918, held the position of janitor-engineer of public school No. 3 in the borough of The Bronx. Prior to that date he made application to the board of education and the supervisor of janitors thereof for a transfer to the position of janitor-engineer of the Evander Childs High School in the same borough, and on said date, on the consent of the supervisor of janitors, the board transferred him and assigned him to duty as janitor-engineer of the Evander Childs High School at a temporary compensation of $100 per month and taking effect on May 15, 1918.

This action was approved by resolution of the board of education, adopted May 8, 1918, but the record of such resolution had been omitted from the minutes of the said meeting. On November 6, 1918, the board adopted a resolution amending its minutes so as to show their approval of the transfer of the petitioner as janitor-engineer of public school No. 3 to the position of janitor-engineer of the Evander Childs High School, at a temporary compensation of $100 per month, taking effect May 15, 1918. In the meantime and on May 8, 1918, the supervisor of janitors had notified petitioner of his assignment as janitor-engineer of the Evander Childs High School, commencing May 15, 1918, at a temporary compensation of $100 per month. The petition alleges that

the said high school building was then nearing completion, but was not publicly opened for the admission of students until on or about September 9, 1918. The petitioner entered upon the discharge of his duties therein on May 15, 1918.

It is further shown that there are two systems of regulating the salaries of janitor-engineers in the public schools, under one of which they are paid salaries directly, as are their helpers and subordinates; while under the second system, sometimes called the measurement system, a gross sum is paid to the janitor-engineer, out of which he pays the salaries and wages of his workers.   The janitor-engineer of the Evander Childs High School was paid under the second system.   The said high school building is a five-story structure, covering an entire city block and containing 111,000 square feet of floor space.   No permanent salary for the position of janitor-engineer of the said high school was fixed by either the board of education or the board of estimate, whereupon the petitioner instituted a proceeding in the Supreme Court for a writ of mandamus requiring the board of estimate and the board of education to fix his salary in the above capacity, which proceeding has been argued but has not yet been decided.

On November 13, 1918, the salary of janitor-engineer for the Evander Childs High School was tentatively fixed at $12,110 for the year commencing December 1, 1918.   The petitioner claims to have employed a staff of helpers from September 9, 1918, when the building was substantially completed, and to have expended a sum of money for the work done in cleaning up the said building.   This amount the board of education has not repaid to him.   It is his contention that the failure of the board of education to fix the permanent salary and its further failure to repay him the sum he claims to have expended, were acts done for ulterior, personal and political reasons and in order to force petitioner to resign his position in the school.

On November 27, 1918, a resolution was passed by the board of education transferring petitioner on December 1, 1918, from his position of janitor-engineer of the Evander Childs High School at $100 per month, to a similar position at public school No. 3, at a proposed compensation of $5,604. Notice to this effect was given him by the secretary of the

board of education and he admits receiving the same on December 2, 1918. He avers that this action was taken without the approval of the city superintendent of schools, that he did not consent to the same and has not resigned his position in said school. He claims to hold his position under permanent tenure, subject only to removal for cause, after trial pursuant to law. No charges have been presented against him in the manner provided by law.

He avers that his net compensation in the high school would be $2,500 per annum, while in school No. 3, it would be less than $1,000 per annum. He then avers that the action of the board of education in making the transfer was illegal and void and taken for ulterior, personal and political reasons, and to remove him from his position as janitor-engineer in the high school without warrant of law. On December 2, 1918, he was compelled to surrender the keys of the high school building and to leave the same. He protested on December 3, 1918, against his removal from the said position.

The answer of the defendant is that the position which the petitioner held was that of janitor-engineer in the competitive class, as classified in group 3, grade 1; that his transfer from school 3 to the high school at the temporary compensation of $100 per month was in the ordinary course of the business affairs of the department of education of the said city of New York; that he was retransferred from said school to public school No. 3 at the annual salary of $5,604 per annum and that he remained in such position until December 11, 1918, when the board of education adopted a resolution accepting his resignation as janitor-engineer.

The exhibits submitted by the defendant in opposition to the motion, none of which is attacked or denied by the relator, show that on November 26, 1918, he wrote a letter to the city superintendent of schools in which he claimed that his appointment to public school No. 3 was a temporary one and he asked to be relieved therefrom because of the conditions in the high school and the near approach of cold weather demanding his attention thereto, and also because of the labor market conditions. He thereafter presented his resignation from the " temporary care " of public school No. 3, Bronx, to take effect December 5, 1918. On December 6,

1918, he again wrote the superintendent of schools, advising him of his prior submission of his resignation and stating that his resignation from the " temporary assignment to the care of said Public School No. 3 " was to take effect that day and that he would no longer be responsible for the building. He concluded by saying: " I am Janitor-Engineer of the Evander Childs High School in the City of New York and am prepared to render all the services incident to that position."

The board of education thereupon, on December 11, 1918, passed a resolution that the resignation of the relator as janitor-engineer in the employment of the board of education of the city of New York, assigned to public school No. 3, Bronx, be accepted, to take effect December 5, 1918. The municipal civil service commission was duly notified by the board to this effect.

Upon these undisputed facts, it seems to me that the relator is not entitled to the alternative writ which has been granted him. He certainly is not entitled to the writ upon the theory that his removal was actuated by improper motives, for there is not a single fact upon which such a charge could be predicated. His mere accusation, without facts to warrant it, raises no issue. There is but one grade in the civil service classification under which the relator comes. It is that of janitor-engineer. This gave the relator no right of permanent occupancy of any one school. He might have been appointed in charge of a school where he would receive only an actual salary. The board would then have had the right to transfer him, in the exercise of its discretion, from any one school to another. The salary would be incidental to his position and as there was but one grade of janitor-engineer, he had no vested right to any particular salary. Where a large amount of compensation had been fixed for a building of which he was in charge, the transfer from that building to another was equally within the power of the board of education to make, and if that power, used in the exercise of its sound judgment, put the relator in a building where his net compensation was reduced, he cannot complain. Where a single grade in the classified service has compensation varying with the extent and character of the services to be rendered and the responsibilities to be

First Department, April, 1919.                [Vol. 187.

undertaken, no one in that classification can complain if his financial return varies as his assignment changes. The original transfer to the high school was in the exercise of the board's discretion. So likewise was the retransfer to school No. 3.

The action of the relator in defying the orders of his official superiors was without justification. If encouraged, the result would be absolute destruction of all discipline. It would leave the board without power to exercise its discretion to do what it deemed best for the public interest and for the welfare of the department. The relator's letter of resignation was not only mutinous and defiant but also deliberately untruthful, for he was not placed in temporary charge of public school No. 3, as he well knew, but his transfer thereto was absolute and permanent.

Treating this retransfer of the relator as being made in good faith, as we must upon the record before us, we find that such action was well within the privilege and power of the board of education. That board is charged with the responsibility for the conduct of the educational department of the city government. It had power to transfer the relator to another school, and when he refused to accept such transfer and, defying its action, resigned from the charge of the school to which he was transferred, the board had the right to accept his resignation and terminate his connection with the school system. We find no warrant for interfering with their action in this case.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the application denied in its entirety, with costs.

CLARKE, P. J., LAUGHLIN and SHEARN, JJ., concurred; SMITH, J., dissented.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.